THE PEOPLE ex rel. CHARLES H. SAYRE et al. *v.* GEORGE
FRANKLIN, County Judge of Seneca County.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1871.)

In ascertaining whether a majority of the persons whose names are upon
the tax-roll have consented to bonding a town for railroad purposes, on
application under the statute (Laws 1869, chap. 907, p. 2303, etc.), joint
owners of property are to be counted separately.

A partnership is to be counted as one tax-payer, under the amendment of
1871 (chap. 925) to chap. 907 of 1869; it was otherwise under the law of
1869 before the amendment.

Whether a partner has authority to bind the copartnership by signing
the petition, or each partner must sign individually—*Quere.*

A person assessed individually, and also as guardian or trustee, is to be
counted but once.

Assessments against persons as representing the estates of deceased persons,
must be excluded from the count.

One whose name appears on the roll and who has signed the petition, must
be counted as a petitioner, although, after assessment of the tax and
before signing the petition, he has parted with his interest, or, it seems,
removed from the town.

It seems the consent of the tax-payer is in the nature of the vote of an
elector.

Signatures to the petition, of tax-payers appearing on the proper roll,
induced by payments in the nature of a bribe, are nevertheless valid.

It is otherwise where the tax-payer has been induced to sign by misrepresen-
tation as to the nature of the instrument signed, or as to the company to
be benefited by the bond, and has had no opportunity to inform him-
self of the contents of the petition.

But the signers must exercise due care and caution in this respect, as where
the petitioner signed under the inducement of false representations, but
had in his possession the means of information as to the truth, the con-
sent was held valid.

The petition must designate the railroad company in view, and it must be
an existing incorporated company, and it seems a petition signed before
incorporation of the company is void.

Petitioners cannot withdraw their consent before presentation of the
petition.   Per MULLIN, P. J., and see *The People, &c.,* v. *Peck* (4 Lans., 528).

CERTIORARI to review the proceeding on application to
bond the town of Varick, Seneca county, before the judge
of that county.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J.   There are on the assessment roll of the town of Varick, in the county of Seneca, for the year 1869, 364 assessments.   These assessments represent 367 persons.

There is an assessment to John Funnel & Brothers, another to Carles & Jonah Reed and Ogden & Van Nostrand.   Each of these represent two persons and each joint owner (if they are joint owners) must be counted in ascertaining whether a majority of those whose names appear on the tax roll have consented to bonding the town.   If they are partners, then each partnership can be counted as one person only, notwithstanding the signature of all the members to the consent may be necessary in order that the whole amount assessed against the firm be estimated as embraced by the consent.

From the whole number thus ascertained, there must be deducted eight names representing assessments against the estates of deceased persons; such assessments are illegal and void.

The act of last winter requires those assessed for dogs only to be deducted in ascertaining the number of tax-payers. There are on the rolls the names of twenty-four persons assessed for dogs only.   These must, therefore, be deducted.

There are on the roll the names of three persons assessed for property owned by them in their own right, and also assessed as guardians or trustees.   The statute (1 R. S., 5th ed., 908, § 5) requires that every person shall be assessed, in the town or ward where he resides when the assessment was made, for all personal estate owned by him, including all personal estate in his possession or under his control as agent, trustee, guardian, executor or administrator, and in no case shall such property be assessed to any other persons.

It necessarily follows that the name of a person owning property in his own right, and as trustee or guardian, can be entered on the assessment roll but once, or if entered more than once it can be legally counted but once in ascertaining the number of persons on the roll.   There must

also be deducted the name of Fitch Hopkins, whose name is on the roll twice, making the number to be deducted thirty-six.

These names being deducted from the whole number on the roll, leave 331 as the whole number of names on the roll.

A majority of this number is 166. The consent of this number must be procured in order to authorize the issuing of bonds by the town. The whole number whose names are signed to the petition is 190. Of these, eleven are taxed only for dogs, and these must, therefore, be deducted. Three others must be deducted, as the property which they assume to represent was illegally assessed.

In this list are included Henry C. Lusk, Catharine Bolander and R. V. Day, executor, and R. R. Steele and Garret Van Sickle, trustees. These must also be deducted, because they have signed in their individual capacity, and cannot sign but once. I am informed that the Court of Appeals has decided that the consent to bond a town cannot be signed through an agent or attorney. It must be signed by the tax-payer himself, but he may authorize another to sign it for him in his presence.

The county judge deducts one from the number consenting, because Fitch Hopkins has signed twice. If the papers incorporated in the case contain the names of all those consenting, I am unable to find Hopkins' name amongst them even once. I assume, therefore, that all the consents are not in the case, and that the disallowance was right, especially as the petitioners' counsel do not find fault with the disallowance.

The county judge refused to count Catharine Harger as one of those consenting, for the reason that after the assessment of the tax in 1869, and before the time of signing the consent, she had sold her land and ceased, as he expresses it, to be a tax-payer of the town. I cannot concur with the county judge in his rejection of this woman.

The legislature, for reasons satisfactory to itself, has seen fit not to submit the question of bonding a town to a vote of the tax-payers at a meeting thereof, called to pass upon that question, but has deemed it best to submit it to the tax-

payers whose names appear on the assessment roll of the town, made and completed shortly preceding the time when the question is submitted to them.

Every person whose name appears on such roll has the right to give his consent, whether he owns any property in the town at the time he signs the consent, or whether he resides at the time in the town.

It was indispensable to the safety of all concerned that the persons who could vote (for consenting is but another mode of voting) should be distinctly ascertained; as the consent of a majority was essential to jurisdiction to issue the bonds, their validity would be left in doubt, unless the facts necessary to show that jurisdiction to issue them had been acquired were easily to be ascertained, and such as could be clearly established. Whether the provision is wise or just that permits persons having no interest in the town, or share in the burden the consent may impose, to have a voice in imposing burthens upon others, is not for the courts. Their duty is to carry into effect the intention of the legislature, leaving to it the duty of protecting the tax-payers against any injustice the law may produce.

The county judge erred in rejecting the consents of the six persons who it is said were induced by bribery to sign the consent. It is conceded that these persons were tax-payers whose names appeared on the proper assessment roll. Being such, they had the right to consent unless the bribery to which they were parties deprived them of it.

No reason is perceived for giving any greater effect to bribery in cases of consents to bonding towns than is given to the bribery of voters at elections. I do not find any statute that declares void the vote of an elector because it was obtained through bribery.

No case, I apprehend, can be found in which an office has been taken from one candidate and given to another, because those who voted for him had been induced to do so by bribery or other corrupt means.

Legislative and other bodies who have the exclusive power

The People ex rel. Sayre *v.* Franklin.

to ascertain and determine the qualifications of their members, not unfrequently expel, or annul the election of, members because the votes by which they were elected were obtained by bribery, but the courts have never assumed to remove an officer who has obtained his office by such corrupt means.   There is no good reason for refusing a vote because it was obtained by bribery.   If the voter has by law the right to vote, the board of inspectors has no power to enter into the question whether his motives are corrupt or pure. When the right is established it is their duty to receive the vote, and the courts, when the question of the validity of the election comes before them, must determine the right to the office by the number of legal votes, regardless altogether of the motives of the voters.   The only protection against bribery in elections for officers, other than members of congress or of the legislature, is by indictment under the statute declaring it to be a misdemeanor to bribe a voter.

   The law as it stood before the passage of the act authorizing county judges to ascertain and determine when a majority in number and amount of the tax-payers had assented to bonding a town, made no provision for ascertaining whether the consent of any of the tax-payers had been fraudulently obtained.   If the injured party had any relief, it must have been in equity.   But now the county judge is to take proof as to the number of tax-payers joining in such petition, and as to the amount of taxable property represented by them.   This involves the question whether the signers of the petition have knowingly signed it, or whether any of them have been induced to sign it by fraud and deception.   A man who affixes his signature to such a petition under the representation that it is some other and different document, or for another and different company, and he has not had an opportunity to inform himself of its actual contents, has not in contemplation of law signed it, and his name should not be counted.

   But it is not every false statement that will relieve the signer.   Every man is bound to be on his guard against

deception, and it is only when after the exercise of due care and caution he has been led into doing what he did not intend to do, relying upon the truth of the representations made to him, that he can repudiate his act.

The county judge erred in refusing to count the name of Edgar N. Van Riper. Although the representations made to him were false, he had in his possession the means of informing himself of the truth and omitted it ; after that he could not be permitted to repudiate his signature.

From the whole number of names signed to the petition, or consenting before the county judge (being 190), there must be deducted

1st. The eleven persons who were taxed for dogs only.

2d. Three who represent estates.

3d. Two who signed personally, and also as guardian or trustee.

4th. One who was not on the tax list.

5th. One whose signature was not proved, making eighteen.

These deducted from 190, leave 172, or six more than a majority of tax-payers.

This result would lead to a reversal of the judgment of the county judge, were it not that it appears that many, if not all, the signatures to the petition were obtained before the incorporation of the Geneva and Ithaca Railroad Company.

It is insisted by the respondent's counsel that a petition thus signed is of no validity, and cannot confer on the commissioners jurisdiction to bond the town of Varick.

The language of the statute is : " Whenever a majority of the tax-payers of any municipal corporation in this State who are taxed or assessed for property, &c., upon the last preceding assessment roll, and who are assessed, or taxed, or represent a majority of the taxable property upon said last assessment roll, shall make application to the county judge of the county in which such municipal corporation is situate, by petition, setting forth that they desire that such corporation shall create and issue its bonds to an amount named in such petition and invest the same or the proceeds thereof in the stock or bonds,

as said petition may direct, of such railroad company in this State, as may be named in said petition."

To satisfy the language of the statute, a railroad company of this State must be designated in the petition. There is no such thing as an unincorporated railroad company. The legislature intended to require the designation of an existing incorporated company, not of a mere ideal company having no existence in fact or in contemplation of law.

The effect of a petition in proper form and properly signed is to charge the whole taxable property of the town with the sum named in it and the interest thereon. The property of those who do not sign is charged with the burden, as well as that of those who do.

It is due to the former that those who vote to charge them should act in good faith; that they should inform themselves of all the facts which should be considered in deciding whether the company whose stock or bonds are to be taken is legally organized; whether its officers are men fit to be trusted with the management of its affairs; whether the route of the road is the one most advantageous to the people; whether it will probably command such a share of freight and travel as will make it a safe or judicious investment. These, together with divers other matters, should be considered before consenting to bond a town, and it is impossible to consider all or any of them, if a corporation has not been created at the time of signing the petition. No route, or even termini can be fixed. No directors named. To permit a minority to be charged with a debt, by persons having no knowledge of facts essential to be known to enable any man to determine whether he should consent to such a charge, would be grossly unjust.

Aside from these considerations, which it seems to me must have induced the legislature to require that a corporation must exist when the petition is signed, the language of the act cannot be satisfied by any other construction. An existing corporation must be named in the petition.

I had occasion to consider this question at Special Term,

in the case of *Standing and others* v. *Blodget and others*, commissioners of the town of Denmark, in Lewis county. And I then arrived at the conclusion, that a petition signed before the incorporation of a railroad company was void, and I have been unable to find any sufficient reason for changing my opinion.

I have in several cases arising before the passage of the law of last winter, held that when partnership or joint owners of real estate were assessed, each partner or joint owner was a tax-payer, and that in estimating the number who consented, each partner and owner consenting must be counted, but in arriving at the amount, only the share of the property owned by the partner, or owner consenting, should be estimated. I held this on the ground, that consenting to bonding was not within the scope of a partnership, and that one partner could not bind his copartner without his consent. Hence to entitle the whole of the amount assessed to be esti mated in ascertaining whether a majority in amount had consented, all the owners must sign the consent.

The law of last winter contains a provision which, it seems to me, renders it necessary to modify the ruling. It provides that any person, partnership or corporation, upon whom it shall have been intended to levy a tax by virtue of said last assessment roll, may join in such petition, and shall have all the rights and privileges under this act as other tax-payers. The effect of this provision is to make not the partners but the partnership the tax-payer. Hence, in ascertaining whether a majority has consented, the partnership can count but one, however many may compose it.

Whether one of the partners can sign the consent and thus bind his copartners, is a question to be decided when it arises. It is not now before me, and I express no opinion upon it.

If my brethren concur with me in the conclusion that the petition is invalid, it will not be necessary to consider the other and only remaining question in the case, which is, whether petitioners can withdraw their consent at any time before the same is presented to the county judge.

My opinion upon the question is that it cannot be done. Each signature forms a sort of consideration or inducement for every subsequent one, and to permit a signer to withdraw after inducing others to sign, would be, to say the least, unfair.

Again, no one has any authority to consent to such withdrawal, if consent is necessary ; nor has any signer the right to possession of petition for the purpose of erasing or otherwise canceling the signature.

Unless fraud in obtaining the signature is established before the county judge, the signers must be held to their consent. Signing is analogous to voting by ballot. When once the ballot is deposited, there can be no withdrawal or change of vote.

For the reasons aforesaid the decision of the county judge must be affirmed, with costs to be paid by the relators.